## BUSSEY v. CHARLESTON AND WESTERN CAROLINA RY.

1. PLEADINGS CONSTRUED.—In the allegations that defendant wilfully and recklessly failed and refused to furnish transportation and that plaintiff was ejected from the train, but also that said ejectment was due to the unlawful, wilful and reckless conduct of the defendant, the latter words refer to "conduct" other than failure to transport.

2. PLEADINGS—EVIDENCE.—If complaint makes no reference to the defendant acting as agent in selling ticket over connecting lines, but defendant alleges, and relies on that fact, plaintiff may offer evidence tending to show that ticket was vitally defective over connecting lines.

3. CONTRACT OF CARRIAGE OF PASSENGER CONSTRUED.—The ticket in question shows on its face that it was intended to have attached to it coupons for the several connecting roads over which defendant sold it to carry the passenger to her desination and back, and the defendant warranted the ticket to be good in form over its own and connecting lines. The fact that a conductor over a connecting line passed it on the outgoing trip does not bind the company so as to require another conductor on same road to receive it on return trip.

4. APPEAL.—EXCEPTIONS to evidence admitted over objection stating no ground or to evidence to which like testimony was admitted without objection, will not be considered.

5. IBID.—Admission of irrelevant evidence is not appealable unless there was abuse of discretion in its admission.

6. WILFULNESS.—Irregular form of ticket under circumstances here and conduct of validating agent after being notified that passenger had been informed that her ticket was defective, tended to show recklessness and disregard of passenger's rights.

7. WANTONNESS.—To define wantonness as a conscious failure to observe due care; a conscious invasion of the rights of another; an intentional doing of an unlawful act, knowing such act to be unlawful, is correct.

8. WILFULNESS.—RECKLESSNESS is the equivalent of wilfulness or intentional wrong.

Before DANTZLER, J., Greenville, November Term, 1905. Affirmed.

Action by Julia Emmie Bussey by guardian against Charleston and Western Carolina Railway Co. From judgment for plaintiff, defendant appeals on following exceptions:

"1. Because, as it is respectfully submitted, the presiding Judge erred in his rulings upon the introduction of testimony in the following particulars:

"(1) In allowing the plaintiff to testify that the defendant's conductor between Fountain Inn and Laurens, when he took up her ticket, told her that the form of it was not good, when such testimony was not in support of any allegation in the complaint, but was entirely outside of the issues made therein, and it was, therefore, incompetent.

"(2) In allowing the testimony just mentioned when, under the law, statements or admissions of this character by the defendant's conductor cannot bind the defendant, as there was no testimony that he had authority to so bind defendant, and the testimony was further incompetent on this ground.

"(3) In allowing the plaintiff to testify to conversations between her and one Richardson in the city of Louisville, and that the said party stated to her that her ticket was all right, in support of a claim for damages on the ground that such ticket was not a good ticket, when there was no such issue

raised in the case, and such testimony was, therefore, incompetent.

"(4) In allowing the plaintiff to testify that the conductor on the Queen & Crescent Road said to her that the ticket she had was not a valid one, and was not worth the paper it was written on, in support of her claim for damages on the ground that she was not furnished a valid ticket, when there was no such allegation in the complaint and no such issue in the case, and when such conductor had no authority to bind defendant to such admission, and, therefore, such testimony was incompetent.

"(5) In allowing the plaintiff's counsel to ask the question of the defendant's witness, Aiken, and requiring the same to be answered, as to whether or not the ticket in this case was valid or invalid, regular or irregular, and why the same was irregular, when there was no allegation in the complaint that the defendant had failed to furnish a good and valid ticket, and there was no such issue raised in the pleadings, and such testimony was, therefore, incompetent.

"(6) In allowing the plaintiff's counsel to ask the question of the defendant's witness, Aiken, and requiring the same to be answered, as to whether the ticket in this case was valid or invalid, regular or irregular, and why the same was irregular, when the answer to such question was a mere matter of opinion upon a legal question of the validity of such ticket, and for that further reason, such testimony was incompetent.

"(7) In allowing the plaintiff's counsel to ask the following question of the defendant's witness, Aiken, and requiring such witness to answer the same, to wit: 'Did you recognize that that ticket was binding upon your railroad?' when such question and the answer thereto was incompetent, for the reason that it was simply giving the opinion of the witness upon a matter of law, which should have been decided by the Court.

"(8) In not allowing the witness, C. L. Townsend, to answer the following question, and in sustaining the plaintiff's

objection thereto, namely: 'Did you think that was a good ticket when you sold it?' when such question and the answer thereto was competent in this case, being in support of the defense that there was not a particle of malice, or wilfulness in the conduct of the said Townsend, as agent of the railway company, in issuing such ticket.

"(9) In allowing the plaintiff's counsel to ask the witness. Townsend, the question, and requiring him to answer it, 'Did you have any other tickets for sale at the time except this?' the error being that such testimony was incompetent, for that it tended to prove facts not alleged in the complaint, and it was, therefore, irrelevant.

"(10) In ruling that the testimony referred to in the 9th exception was competent on cross-examination, for the reason, as alleged by the Court, that defendant's counsel had been allowed to ask the same witness in relation to the ticket, when, it is respectfully submitted, that the question referred to by the presiding Judge had been ruled incompetent, and when, further, even if allowed, such ruling would not be a justification, for the reason that the question asked by defendant's counsel was merely for the purpose of showing that there was no wilful issuing of an illegal or irregular ticket by the defendant.

"2. Because, as it is respectfully submitted, the presiding Judge erred in refusing to grant the defendant's motion for a nonsuit at the close of the plaintiff's testimony, when such motion should have been granted on the following grounds, and it was error of law to refuse to do so:

"(1) There was absolutely no testimony tending to show any facts to go to the jury to entitle the plaintiff to punitive damages.

"(2) There being no testimony to go to the jury. upon which a verdict for punitive damages can stand, there was no issue for the jury at all, for the reason that the action was for punitive damages only, and hence, there could be no recovery of compensatory damages.

"(3) There was no testimony upon which the jury could render a verdict against the defendant, C. & W. C. Ry. Co., for either punitive or compensatory damages, because the contract introduced in evidence showed that the C. & W. C. Ry. Co. was not to be liable beyond its own lines.

"(4) Because the evidence showed that if there was any wrong done to the plaintiff, it was done by a railroad company other than the defendant, C. & W. C. Ry. Co.

"3. Because, as it is respectfully submitted, the presiding Judge erred in holding on the motion made by the defendant at the close of plaintiff's testimony for a nonsuit, that such motion should not be granted, because there was no evidence that the Queen & Crescent Railroad was a party to the contract evidenced by the ticket of the defendant, C. & W. C. Ry. Co., when the undisputed evidence on the part of the plaintiff showed that the ticket issued by the defendant had been recognized by the Queen & Crescent Railroad as a valid ticket, and that that company had allowed the plaintiff to ride on it on her trip to Louisville, Ky.

"4. Because, as it is respectfully submitted, the presiding Judge erred in refusing to grant the defendant's motion for a nonsuit at the close of all the evidence in the case, and in not then holding that there was no evidence to go to the jury tending to show that the defendant, Charleston & Western Carolina Railway Company, had been guilty of any wilfulness or wantonness whatsoever towards the plaintiff, and in not therefore granting the defendant's motion for a nonsuit.

"5. Because, as it is respectfully submitted, the presiding Judge erred in charging the jury as a matter of law that the defendant, in the ticket issued by it, guaranteed the plaintiff transportation from Fountain Inn, S. C., to Louisville, Ky., and from Louisville, Ky., to Fountain Inn, S. C., when in such ticket the defendant did not make such guarantee for itself, but only as agent beyond its own lines.

"6. Because, as it is respectfully submitted, the presiding Judge erred in charging the jury that the clause in the contract upon the face of the ticket in evidence reading as fol-

lows: '(10) Responsibility, in selling this reduced rate ticket for passage over other lines, and in checking baggage on it, this company acts only as agent, and it is not responsible beyond its own line,' could not bind the plaintiff, unless the lines over which she was to pass were attached to and made a part of the contract, or unless she had knowledge of the lines over which she was to pass, when, we submit, under the law, the plaintiff was bound by such stipulation, whether the lines over which she was to pass were or were not mentioned in the ticket, and whether she did or did not know what such lines were to be.

"7. Because, as it is respectfully submitted, the presiding Judge erred in refusing to charge the jury in the language of the defendant's third request, as follows: 'The complaint does not allege wilfulness or wantonness in the matter of furnishing a ticket to the plaintiff, and, therefore, there can be no recovery for any act of the defendant or any of its agents, in or about the furnishing of a proper ticket, or the failure to do so,' when, we submit, under the law, the defendant was entitled to have this instruction given to the jury, as the plaintiff had not alleged in her complaint against the defendant any negligence in failing to furnish a proper ticket, but, on the contrary, had alleged that the defendant furnished to the plaintiff a first class round trip ticket, which carried her safely from Fountain Inn to Louisville, and when her right to recovery was based entirely upon the alleged wilfulness of the C. & W. C. Ry. Co. in ejecting the plaintiff from a train on the Queen & Crescent Road on her return trip.

"8. Because, as it is respectfully submitted, the presiding Judge erred in his instruction to the jury in defining wantonness, to be where one consciously fails to observe due care, when we submit that such definition was erroneous in law, and tended to prejudice the rights of the defendant.

"9. Because, as it is respectfully submitted, the presiding Judge erred as a matter of law in refusing to grant a new trial on the first ground upon which motion for new trial was based, to wit: because there was no evidence showing or

tending to show that any agent of the defendant railway company had committed a wrong toward the plaintiff, knowing it was a wrong.

"10. Because the presiding Judge erred as a matter of law in not granting a new trial on the second ground upon which motion therefor was based, to wit: because the verdict was contrary to the charge of the Court. The jury was instructed that unless they found from the preponderance of the evidence that some agent or agents of the railway company did a wrong to the plaintiff, knowing it was a wrong, they could not find in favor of the plaintiff. There was not a tittle of evidence that any such wrong was committed, and, therefore, the failure to grant a new trial was error of law.

"11. Because the presiding Judge erred as a matter of law in refusing to grant a new trial on the third ground upon which the motion was based, namely: That there was absolutely no evidence tending to show that there was any wilfulness on the part of the defendant or its agents in the particulars stated in the complaint, and to allow a verdict to stand which was based upon wilful acts not alleged in the complaint, was error of law.

"12. Because the presiding Judge erred in not granting a new trial on the fourth ground upon which motion therefor was based, namely: that the agent of the defendant committed no wrong toward the plaintiff knowingly, and showing, further, that the only damage or injury sustained by the plaintiff was a delay of one day, and a verdict for $2,500 was excessive, and we submit the failure to set it aside was error of law."

*Messrs. S. J. Simpson* and *M. F. Ansel,* for appellant. *Mr. Simpson* cites: *Proof should be confined to allegations:* 45 S. C., 278. *Construction of ticket was for Court:* Thomp. on Trials, sec. 377. *Intent of agent is admissible to rebut wantonness:* 57 S. C., 280; 1 Wig. on Ev., sec. 581. *Through ticket without coupons is valid:* 3 Wood on R. R., sec. 359; 4 Elliott on R. R., sec. 1596; *Hood* v. *R. R.,* 22

Conn. *No act of any agent of defendant was wilful.* 29 S. C., 271; 62 S. C., 270; 64 S. C., 423; 68 S. C., 98; 69 S. C., 434; 73 S. C., 9; 72 S. C., 411, 343; 2 Suth. on Dam., sec. 1093; 69 S. C., 445. *Act of agent of connecting line was not act of agent of defendant:* 26 S. C., 91; 65 S. C., 523; 62 S. C., 414; 65 S. C., 103; 69 S. C., 110; *Daniels* v. *Ry.,* 62 S. C. *Passenger is bound by provision in ticket that defendant was agent of connecting line:* 43 L. R. A., 140; 65 S. C., 522, 103; 26 S. C., 91; *Daniels* v. *Ry.,* 62 S. C.

*Messrs. McCullough & McSwain,* contra. *Mr. McCullough* cites: *Conscious violation of rights of another brings liability for punitive damages:* 65 S. C., 516; 69 S. C., 160. *Conduct of agent in selling ticket was reckless:* 54 S. C., 498. *An agent failing to disclose his principal is liable for his contracts:* 1 Ency., 1122; Clark on Con., 742; 19 S. C., 354; 43 S. C., 461; 28 Ency., 174. *Wantonness defined:* 65 S. C., 510.

September 6, 1906. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff, through intentional wrong on the part of the defendant. The allegations of the complaint material to the questions involved, are substantially as follows:

"(1) That on the 12th of June, 1905, the plaintiff applied to defendant's agent at Fountain Inn, S. C., for transportation to Louisville, Ky., and return, paid the agent the fare demanded for the ticket, and the agent delivered to her a round trip ticket for one first class passage and return, from Fountain Inn to Louisville, Ky., *via* Spartanburg, S. C.

"(2) That on the said day, plaintiff boarded one of defendant's trains, and was carried to Louisville; after arriving there, she applied to Jas. Richardson, special agent of the defendant, as directed by it, for an extension of her ticket, until the 10th of July, 1905, which request was granted.

"(3) That she complied with all the requirements and conditions of the defendant, with reference to said transportation, and the defendant unlawfully, carelessly, recklessly, wilfully and wantonly failed and refused to furnish to her transportation to Fountain Inn from Louisville, and on the 10th of July, 1905, she was ejected from the train upon which she was traveling, and which was a train on the same road over which she traveled in going to Louisville, which ejection was due to the unlawful, wilful, wanton and reckless conduct of the defendant.

"(4) That plaintiff was ejected at Danville, Ky.; she was an utter stranger in the town, did not have but two dollars on her person, nor was there any one to whom she could appeal for relief; in her humiliated and deplorable condition, she telephoned to a relative at a distance, who advanced money enough to pay her hotel bill, and to buy another ticket home, where she arrived on the 13th of July, 1905."

The defendant denied the material allegations of the complaint, and alleged:

"That the contract between plaintiff and defendant was, that the defendant, in selling said reduced rate return ticket, for passage over other lines than its own, acted only as agent, and is not responsible beyond its own line, said ticket having the following conditions attached to the same, which was duly accepted and agreed to by the plaintiff herein, to wit: '10. Responsibility. In selling this reduced rate ticket for passage over other lines, and in checking baggage on it, this company acts only as agent, and is not responsible beyond its own line.' That Danville, Ky., is not upon the line of road belonging to this defendant, nor operated by it."

The jury rendered a verdict in favor of the plaintiff for $2,500, and the defendant appealed upon exceptions, which will be set out in the report of the case. Before proceeding to consider the exceptions, it will be necessary to determine what issues are raised by the pleadings.

The complaint alleges that the plaintiff applied to the defendant's agent for trasportation to Louisville, Ky , and

return, and paid to the agent the fare demanded for said ticket. The third paragraph of the complaint not only alleges that the defendant wilfully and recklessly failed and refused to furnish transportation, and that the plaintiff was ejected from the train, but also that said ejection was due to the unlawful, wilful, wanton and reckless conduct of the defendant. Unless the last mentioned words refer to conduct other than failure to transport, then they are without force and effect, as that allegation had already been made. Pleadings under the Code are to be liberally construed, with a view to substantial justice between the parties, and, if possible, effect should be given to all the language of the complaint, instead of a part only. We are constrained, therefore, to rule that the word "conduct" did not have reference solely to the failure to furnish transportation.

The *complaint* makes no reference whatever to the fact that the defendant was only acting as agent, in selling the ticket over connecting lines; but the defendant relies upon this fact in its answer. The plaintiff had the right to offer testimony for the purpose of showing that the ticket was vitally defective over connecting lines, as this fact would render ineffectual the defense set up in answer. It was only incumbent upon the plaintiff, in the first instance, to introduce testimony tending to sustain the allegations of the *complaint,* in order to make out a *prima facie* case.

Before proceeding to consider the specific assignments of error, we deem it advisable to state our construction of the contract. The ticket was composed of two parts, which, evidently, were not intended to be attached together for general use, as they contained inconsistent provisions. The heading or red part of the ticket states the following conditions: "Good subject to conditions printed below for one first class passage to Louisville, Ky., and return, *via route designated in coupons attached.*" "This ticket if presented by any other than the person named hereon, shall be forfeited, and any agent or conductor of any

line over which it *reads,* shall have the right to take up and cancel the entire ticket." "The holder of this ticket agrees, that the liability of the lines, over which this ticket *reads,* shall be," &c. "This ticket is subject to the rules and regulations of each line, over which it reads." "No agent nor employee of *any line* has power *to alter, modify or waive* any of the conditions named in this contract." "In selling this reduced rate ticket for passage over other lines, and in checking baggage on it, this company acts only as agent, and is not responsible beyond its own line." (All the italics ours.)

The only coupons attached are in the blue part of the ticket and are as follows:

"Charleston and Western Carolina Ry." "Round trip party ticket—Going coupon." "Good for 1st class passage 1 persons as punched in margin of return coupon, from Fountain Inn, S. C., to Louisville, Ky., *via* Spartanburg."

The return coupon is similar, except the starting point and destination are reversed.

The words *via* route designated in coupons attached clearly show that the heading or red part of the ticket was intended to be attached to the coupons, designating the route over the connecting lines, and that the ticket was defective in form. (E. N. Aiken, traveling passenger agent of the Q. & C. Road, a witness for the defendant, testified that it is the universal rule to exchange *coupon* tickets with any road, that is financially sound; and that the plaintiff was ejected because her ticket was irregular.)

The other words italicized also show that coupons designating the route over connecting lines were contemplated so as to make the ticket complete.

The words, "no agent nor employee of any line has power to alter, modify, or waive any of the conditions named in this contract," are important, as they manifest an intention, on the part of the defendant to reserve the right to designate the route over the connecting lines, in the ticket itself, and to *prevent* a connecting line from recognizing the ticket unless it was mentioned in a coupon attached, and then setting

up the claim that the ticket was sold over its line, and that the defendant acted as its agent in such sale. A conductor, therefore, on a connecting line, did not have the right to interpolate into the ticket provisions that would make it apply to his line, and he was not bound to receive it in its vitally defective form. The words, "in selling this reduced rate ticket for passage over other lines, this company acts only as agent, and is not responsible beyond its own line," must be construed in connection with the other provisions of the ticket, when it will be seen that "other lines" mean other lines mentioned in coupons attached. When the defendant sold the ticket, there was an implied agreement that it had made arrangements with connecting lines to accept the ticket in the form in which it was sold. In other words, it warranted the ticket to be good in form, for one first class passage from Fountain Inn to Louisville, Ky., and return, not only over its own but connecting lines.

The appellant's attorneys seem to recognize this principle, for in their argument they say: "She might have complained, if, on the going trip, she had been unable to ascertain the route she was to take, and no one of the defendant's connections had been willing to recognize her ticket, as a legal contract on its behalf."

They, however, contend that there was no failure in this respect; that as her ticket was recognized from Fountain Inn to Louisville, there was no ground for such complaint; and that the Q. & C. Road, having once recognized her ticket, it was legally bound to recognize it on her return trip. This view cannot be sustained, for the reason that the failure of one conductor to discharge his duty to eject a person attempting to ride upon a fatally defective ticket, would not bind the company, to the extent of preventing another of its conductors on a different train and at another time, from refusing to recognize the said ticket.

We now proceed to consider the exceptions in their regular order.

*First exception.* All the particulars in which error is assigned, except the eighth, must be overruled, for the reason, either that the grounds of objection to the introduction of the testimony were not specified, or testimony to the same effect was afterwards introduced without objection, or the testimony was irrelevant.

The introduction of irrelevant testimony must be left, in large measure, to the discretion of the presiding Judge, and his rulings are not appealable, unless there was an abuse of discretion, which does not appear in this case. The eighth specification of error mentioned in said exception cannot be sustained, because the witness afterwards answered the question in the affirmative.

*Second exception.* The very irregular form of the ticket, especially under the circumstances of this case, and the conduct of the validating agent, after being notified that the plaintiff had been warned that her ticket was defective, tended to show recklessness and a disregard of the plaintiff's rights.

*Third exception.* This exception has been disposed of by what has been already said.

*Fourth exception.* The question presented by this exception has been disposed of.

*Fifth exception.* The language of the presiding Judge, mentioned in this exception, forms only a part of his charge on the subject, and was explained and qualified by the words immediately following said language, in which he referred to the 10th clause of the ticket set out in the answer. But without the qualification, the charge was in conformity with our construction of the contract.

*Sixth exception.* While this charge was erroneous, it was not prejudicial, under our construction of the contract.

*Seventh exception.* This exception is disposed of by what was said in determining what issues were raised by the pleadings.

*Eighth exception.* This exception seems to have been abandoned, as it is not discussed by the appellant's attorneys in their argument. It forms only part of the sentence, which is as follows: "Wantonness is a conscious failure to observe due care, a conscious invasion of the rights of another, an intentional doing of an unlawful act, knowing such act to have been unlawful." It is not necessary to cite authorities to show that the exception, even if it has not been abandoned, cannot be sustained.

*Ninth, tenth, eleventh and twelfth exceptions.* These exceptions must be overruled for the reason that we have already shown there was testimony tending to prove recklessness, which is the equivalent of wilfulness or intentional wrong. *Pickett* v. *Ry.*, 69 S. C., 445, 48 S. E., 466.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.